# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 04-1653

ANDREW RUTTENBERG,

*Plaintiff-Appellant,*

*v.*

UNITED STATES LIFE INSURANCE
COMPANY IN THE CITY OF NEW YORK,
a subsidiary of American General
Corporation,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 8200—**Joan Humphrey Lefkow**, *Judge.*

_____

ARGUED NOVEMBER 10, 2004—DECIDED JUNE 30, 2005

_____


Before COFFEY, RIPPLE and SYKES, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Andrew Ruttenberg filed a claim for total disability benefits with his insurer, United States Life Insurance Company in the City of New York ("U.S. Life" or the "Company"). After protracted consultations with a number of physicians and consultants produced no ruling on the claim, Mr. Ruttenberg filed suit. Originally, he alleged claims under Illinois law. The parties agreed to a stay in the proceedings while U.S. Life considered

Mr. Ruttenberg's claim. When U.S. Life denied the claim, the parties returned to the district court. The district court then determined that Mr. Ruttenberg's claim was pre-empted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. It therefore dismissed the action with leave to file a claim under that statute.

After Mr. Ruttenberg filed an ERISA claim, the parties conducted discovery, and, eventually, each filed motions for summary judgment. The district court granted U.S. Life's motion; it concluded that Mr. Ruttenberg did not qualify for coverage under the plan because he could not be considered a full-time employee under its terms.

Mr. Ruttenberg now appeals both the grant of summary judgment and the district court's previous ERISA preemption determination; U.S. Life cross-appeals certain rulings made by the district court in the course of this litigation. For the reasons set forth in the following opinion, we reverse the judgment of the district court and remand this case for proceedings consistent with this opinion.

# I

# BACKGROUND

## A. Facts

Mr. Ruttenberg worked as an independent commodity trader at the Chicago Board of Trade and Mercantile Exchange (the "exchange"), a position requiring a certain amount of screaming in order to gain the attention of other traders on the floor. The exchange floor was open for thirty-five hours per week. He did not keep regular hours on trading days. Sometimes, he would work several hours at the exchange. Other times, he would leave early after making significant gains or taking losses. He spent time

away from the floor preparing for trades or reconciling accounts. Trading constituted his primary occupation, and the evidence shows that, at times, he made over $30,000 in profits per month.

Mr. Ruttenberg cleared his trades through SMW Trading Co. ("SMW"). The firm contracted through U.S. Life[1] to provide disability insurance to independent traders. Mr. Ruttenberg paid premiums on a policy which entitled him to $10,000 per month in coverage. On March 29, 2001, Mr. Ruttenberg filed a claim for disability benefits. He submitted evidence from his physician, Dr. Goldberg, that asthma prevented him from performing his job. Two other physicians, Dr. Taitz and Dr. Fisher, performed tests at Dr. Goldberg's request and found no nasal or other obstructions. U.S. Life forwarded the claim to its administrator, Disability Reinsurance Management Services ("RMS"). The RMS in-house consultant, Dr. Hogan, reviewed the claim and offered medical opinions; RMS determined that Dr. Goldberg's opinion was based on subjective complaints. RMS then arranged an appointment for Mr. Ruttenberg with another specialist, Dr. Diamond.

Dr. Diamond examined Mr. Ruttenberg and diagnosed asthma and vocal cord dysfunction and expressed concern that Mr. Ruttenberg's hoarseness, still apparent after Mr. Ruttenberg had been away from work for seven months, might be permanent. To the diagnosis, he attached a pulmonary function report and a plethysmograph report; in the latter, the technician noted that Mr. Ruttenberg had been unable to achieve reproducible results in his exhalation flow rate. Dr. Diamond appended an additional letter to the

---

[1] In 2001, U.S. Life replaced SMW's previous insurance provider, Paul Revere Life Insurance Co.

report, in which he sought to clarify his opinion that Mr. Ruttenberg is permanently disabled because he could not continue to work as a trader.

Dr. Hogan reviewed Dr. Diamond's report and concluded that a definitive diagnosis could not be made without viewing Mr. Ruttenberg's vocal cords. A claims analyst for U.S. Life told Mr. Ruttenberg that the company might accept liability if the test supported Dr. Diamond's conclusion. A month later, RMS contacted Mr. Ruttenberg and said it was waiting for Dr. Fisher to review Dr. Hogan's interpretation. Mr. Ruttenberg filed suit the next week.

## B.  District Court Proceedings

Mr. Ruttenberg's action initially was based in diversity, but the district court dismissed the suit without prejudice on August 21, 2002, because Mr. Ruttenberg had not pleaded diverse defendants. He later refiled the complaint, and the parties agreed to a stay of proceedings while RMS re-reviewed the claim. Mr. Ruttenberg submitted additional medical evidence, including the results of a nasopharyn-goscopy performed by Dr. Diamond.[2] The test led Dr. Diamond to confirm his previous diagnosis and disabil-ity opinion because he saw the "classic posterior chinking" associated with vocal cord dysfunction. He further stated that the inconsistent results noted by the plethysmograph technician a year earlier were not the result of insufficient effort on Mr. Ruttenberg's part, as had been implied by U.S. Life, but were associated with the dysfunction.

---

[2] U.S. Life's review of the claim took well over one year; Dr. Diamond performed this test approximately one year after first diagnosing Mr. Ruttenberg.

RMS forwarded the medical records to another expert, Dr. Karetzky, for review. This physician determined that Mr. Ruttenberg's results stemmed from his poor effort and found nothing that would impair significantly his work.[3] On November 19, 2002, RMS reported the results to Mr. Ruttenberg. It also raised questions about whether he qualified as a full-time employee under the policy and requested documentation to establish that he had worked more than thirty hours per week as required by the policy. Mr. Ruttenberg responded that it was impossible to actually work on the floor of the exchange for thirty hours per week and asserted that he worked on trades and performed other job-related functions which, taken together with his time on the floor, amounted to more than thirty hours. On December 6, 2002, U.S. Life denied Mr. Ruttenberg's claim. It concluded, among other things, that his injury did not meet the definition of disability under the policy and that U.S. Life could not substantiate his eligibility. The letter stated that Mr. Ruttenberg had the right to appeal the decision; the parties then returned to the district court.

U.S. Life filed a motion alleging that ERISA preempted Mr. Ruttenberg's state law claims and seeking dismissal for failure to exhaust administrative remedies. In response, Mr. Ruttenberg argued that his insurance plan was not an ERISA plan because (1) SMW did not establish or maintain

---

[3] In an addendum to this report, submitted after Mr. Ruttenberg's claim ultimately was denied, Dr. Karetzky admitted that the finding of posterior chinking validated Dr. Diamond's initial diagnosis but that he could not confirm the chinking because the nasopharyngoscopy procedure had not been videotaped. He further suggested that Mr. Ruttenberg's hoarseness could be psychosomatic.

it and (2) as an independent contractor, he was not a participant or beneficiary as ERISA employs those terms.

The district court rejected the first argument because SMW created the insurance plan, designated eligible employees and contributed funds. With respect to Mr. Ruttenberg's second argument, the district court stated that Mr. Ruttenberg qualified as a "beneficiary" under ERISA,[4] 29 U.S.C. § 1002(8), and his state law claims thus were preempted by that statute, *id.* § 1144. The court based its beneficiary determination on the plain language of § 1002(8), which defines a beneficiary as "a person designated . . . by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder," and precedent in other courts. Having determined that the policy qualified as an ERISA plan, the district court found Mr. Ruttenberg's state law claims to be preempted.[5] The district court dismissed Mr. Ruttenberg's complaint with leave to refile an ERISA cause of action; it thus found no need to address U.S. Life's argument that Mr. Ruttenberg had failed to exhaust his administrative remedies. Mr. Ruttenberg refiled an ERISA action.

---

[4] In its order, the district court "conclude[d] that Ruttenberg would qualify as a 'participant' under ERISA." R.31 at 7. The district court subsequently corrected this typographical error, confirming that it meant to say "beneficiary" rather than "participant." R.62 at 13 n.4.

[5] Mr. Ruttenberg argued that ERISA's saving clause avoided preemption on one state law claim for vexatious refusal to pay. The district court rejected his position because state law provided for remedies not allowed in ERISA and allowing the claim to proceed would thus undermine ERISA's enforcement procedures. *See* 29 U.S.C. § 1132(a).

After discovery, the parties filed cross-motions for summary judgment.[6] U.S. Life based its motion on two grounds, both relating to Mr. Ruttenberg's eligibility under the policy: (1) that he was not an "employee" of SMW and therefore was not covered by the policy terms; and (2) that even if he was an "employee," he did not qualify as "full-time" as required by the policy because there was no evidence that he worked more than thirty hours per week.[7] The district court rejected the first argument, concluding

---

[6] The district court had to address several threshold matters before reaching the merits. First, Mr. Ruttenberg requested reconsideration of the previous determination that his state law claims were preempted, but the court reaffirmed its previous decision. Second, U.S. Life argued that the court should apply an arbitrary and capricious standard in reviewing its decision to reject Mr. Ruttenberg's claim. The district court found no language in the policy reserving discretion to the administrator and rejected—as not part of the plan—an attendant document offered by U.S. Life to establish its discretion. As a result, the court reviewed the denial of benefits de novo. Third, the court had to address whether Mr. Ruttenberg exhausted his administrative remedies, which had been deferred in the previous decision. It excused exhaustion on the basis of futility: Nothing in the course of the parties' dealings indicated any result other than that U.S. Life would once again deny Mr. Ruttenberg's claim.

[7] These arguments are just two that U.S. Life adopted in the course of this litigation. Its primary position has been that Mr. Ruttenberg actually is not disabled, and, to this end, U.S. Life has argued that he is faking the injury, that he had an undisclosed preexisting condition or that his injury is connected to past alcohol or drug abuse. In the alternative, U.S. Life has argued, among other things, that he failed to exhaust administrative remedies and, finally, that Mr. Ruttenberg never was covered by the policy.

that the policy was ambiguous because it limited benefits to "employees" but listed as employees traders reporting income on IRS 1099 forms, even though such individuals generally are considered independent contractors. Given the ambiguity, the district court applied the maxim *contra proferentem* and construed that ambiguity against U.S. Life, foreclosing the company from arguing that Mr. Ruttenberg was not an "employee" under the policy.

The court, however, accepted U.S. Life's second argument. The district court read the policy's terms to require plainly that Mr. Ruttenberg be a full-time employee and, just as plainly, that he work at least thirty hours per week. The evidence submitted by Mr. Ruttenberg indicated that he spent at most fifteen to twenty hours working the exchange floor, and the court noted that

> [p]resumably by those hours he meant to suggest that he was trading in the pit during those times, and it is reasonable to suggest that Ruttenberg may have spent another 10 hours a week preparing for his trades. However, with no evidence in the record to support this or otherwise create a question of fact on this issue, there is little basis to say that Ruttenberg could be considered "Full-Time" based on the policy's express terms.

R.62 at 23. Finding no evidence that Mr. Ruttenberg was eligible for benefits under the policy, the court granted U.S. Life's motion for summary judgment.

Mr. Ruttenberg appeals the grant of summary judgment based on his ineligibility under the "full-time" provision, and U.S. Life cross-appeals the district court's initial determinations that the Company did not have interpretive authority under the policy and that Mr. Ruttenberg qualified as an "employee."

## II

## DISCUSSION

### A. Standard of Review

This court reviews a district court's grant or denial of summary judgment de novo, making all reasonable inferences in favor of the nonmoving party. *See Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 631 (7th Cir. 2004). In interpreting ERISA plans, we apply general principles of contract law under the federal common law guiding interpretation of ERISA claims. *Bock v. Computer Assocs. Int'l, Inc.*, 257 F.3d 700, 704 (7th Cir. 2001).

In ERISA cases, an important principle governs the scope of a district court's, and therefore our, review: A district court reviews de novo a denial of benefits unless the plan grants to the plan administrator the discretionary authority to construe policy terms. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see also Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 311 (7th Cir. 1992). If the plan grants an administrator such authority, that administrator's interpretation of contract terms is reviewed under an arbitrary and capricious standard. *Firestone*, 489 U.S. at 115. U.S. Life submits that the district court erred in determining that the policy did not give U.S. Life interpretive discretion; in its view, the appropriate review should be deferential rather than de novo.

To avoid an overly broad grant of discretionary authority based on boilerplate policy language, we have articulated a notice requirement that must be met before an insurer may be said to have retained interpretive discretion: An employee must be told in clear terms that the administrator reserves the authority to construe terms in the plan. *See Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 333 (7th Cir. 2000). Absent notice sufficient to satisfy the *Herzberger*

standard, an insurer is not entitled to arbitrary and capricious review of its interpretations.

U.S. Life submits that it met the *Herzberger* notice standard. According to the Company, the relevant notice is contained in a document titled the "Master Application for Employee Benefits" ("Master Application"). R.36-1 at 51. Specifically, U.S. Life invites our attention to the "Applicant's Declaration" section of the Master Application, which states that

> [i]f the insurance contract [that SMW applied for] compromises a part of an employee benefit plan, [U.S. Life] is granted sole discretionary authority to determine eligibility, make all factual determinations and to construe all terms of the policy.

*Id.* at 53, ¶ 6. The district court erred, according to U.S. Life, in ignoring the Master Application and basing its lack-of-notice determination on the summary plan description ("SPD") given to the insured.[8] Further, U.S. Life argues that its relationship is actually with the policyholder, SMW, and that the terms of the plan (in its view, the Master Application) control over the SPD. In U.S. Life's view, responsibility for notifying independent traders of the Master Application provisions rested with SMW; while Mr. Ruttenberg might have an independent cause of action against SMW, that fact does not change the discretionary authority vested in U.S. Life by the Master Application.

Both the SPD and the plan's terms are silent as to U.S. Life's interpretive authority. U.S. Life points only to language contained in the Master Application, but the Master

---

[8]   A summary plan description is "a plain language version of the Plan." *Powell v. A.T. & T. Communications, Inc.*, 938 F.2d 823, 824 (7th Cir. 1991).

Application is, by its terms, an application for group insurance coverage submitted by SMW, not the policy itself. Neither the SPD, the certificate of insurance, nor any subsequent insurance document reproduces the discretion provision and no document notifies an insured that U.S. Life retains interpretive discretion.[9] Given the lack of discretionary language in any document except for the Master Application, we cannot say that boilerplate language in a contract application—representing the negotiations leading to contract formation rather than the substance of the contract—qualifies as the type of notice required by *Herzberger*. We, like the district court, therefore review Mr. Ruttenberg's claims de novo and afford no deference to U.S. Life's interpretation of contract terms.

## B. ERISA Preemption

Mr. Ruttenberg first challenges the district court's determination that ERISA preempted his state law claims. The statute "supersede[s] any and all State laws insofar as they . . . relate to any employee benefit plan described in [29 U.S.C. §] 1003(a)." 29 U.S.C. § 1144(a). Under § 1003, ERISA applies to "any employee benefit plan" that is, among other things, maintained by an employer engaged in commerce. *Id.* § 1003(a)(1). As relevant to this appeal, the statute

---

[9] For example, the discretionary language did not recur in the "Digest of Group Insurance Plan." R.36-1 at 54. Nor is there language reserving interpretive authority to U.S. Life in the certificate of insurance. *Id.* at 273 et seq. Notably, a transmittal sheet from U.S. Life's Contract Development office itself refers to the certificate of insurance as "the contract." *Id.* at 273.

defines an "employee benefit plan," [10] as "any plan, fund, or program which was . . . established or maintained by an employer . . . for the purpose of providing for" one of two classes of covered persons: "participants or their beneficiaries." *Id.* § 1002(1). A "participant" in an ERISA-qualifying plan

> means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

*Id.* § 1002(7). The other qualifying ERISA class members are "beneficiaries," that is, "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." *Id.* § 1002(8). Thus, Mr. Ruttenberg's state law claims would be preempted by the ERISA scheme if he qualifies as either a "participant" or a "beneficiary" of the U.S. Life plan. Given the procedural posture in which it determined the question, the district court assumed that Mr. Ruttenberg was not an "employee" of SMW and therefore could not be considered a plan "participant." For purposes of the present discussion, we also shall assume that Mr. Ruttenberg does not qualify as an employee and therefore is not an ERISA "partici-

---

[10] The term "employee benefit plan" or "plan" in the ERISA statute refers to either an employee welfare benefit plan or an employee pension benefit plan. 29 U.S.C. § 1002(3). The parties agree that the plan at issue here would be an employee welfare benefit plan, *id.* § 1002(1), if indeed it qualifies as any ERISA plan.

pant."[11] Under this assumption, ERISA preemption is only possible if Mr. Ruttenberg qualifies as a "beneficiary."

We look first to the language of the statute. When the language of a statutory provision is clear, our sole function is to enforce its terms. *See United States v. Jones*, 372 F.3d 910, 912 (7th Cir. 2004). Read alone, the ERISA definition of "beneficiary" seems clear. A beneficiary is defined as one who is "designated by a participant, *or by the terms of an employee benefit plan*, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8) (emphasis added). By employing commas to set the emphasized language apart, the statute appears to establish two distinct classes of individuals who might be "beneficiaries": those designated by a participant and those who are, like Mr. Ruttenberg, directly designated to receive benefits by the plan itself.

But other ERISA provisions might be said to raise questions about the clarity of § 1002(8). For example, one might reach an apparent contradiction between the definition of a qualified benefit plan as one "maintained for the purpose of providing for its participants or *their* beneficiaries," *id.* § 1002(1) (emphasis added), and the § 1002(8) language. The congressional findings that introduce ERISA in the United States Code, *see id.* § 1001(b) (declaring ERISA's purpose to be the protection of commerce and "the interests of participants in employee benefit plans and *their beneficiaries*"

---

[11] The question of Mr. Ruttenberg's status arose when the district court decided U.S. Life's preemption motion. At the time, the district court did not have occasion to construe the contractual term "employee" and its application to Mr. Ruttenberg, as it did in the subsequent motion for summary judgment. We place ourselves in the district court's shoes and assume, for the present discussion, that Mr. Ruttenberg is not an "employee" or an ERISA "participant."

(emphasis added)), might also be said to be in tension with § 1002(8). Mr. Ruttenberg therefore suggests a limited reading of the term "beneficiary." In his view, the term encompasses only those individuals designated as such *by plan participants* (i.e., SMW employees). By contrast, the district court, and U.S. Life here, take the view that § 1002(8) includes within the definition of "beneficiary" those who, like Mr. Ruttenberg, are designated to receive benefits by the plan itself and not just those who are designated beneficiaries by a participant.

We do not think these provisions, when read in the context of the entire statute, create a severe textual ambiguity. Our sister circuits that have considered the question agree with U.S. Life's view that, under § 1002(8), a "beneficiary" may be a person designated to receive benefits under a plan; "beneficiary" is not limited to those who are designated as beneficiaries by a "participant." *See Hollis v. Provident Life & Accident Ins. Co.*, 259 F.3d 410, 415 (5th Cir. 2001); *Wolk v. UNUM Life Ins. of America*, 186 F.3d 352, 356 (3d Cir. 1999); *Engelhardt v. Paul Revere Life Ins. Co.*, 139 F.3d 1346, 1351 (11th Cir. 1998); *Prudential Ins. Co. of America v. Doe*, 76 F.3d 206, 208 (8th Cir. 1996); *Peterson v. American Life & Health Ins. Co.*, 48 F.3d 404, 408-09 (9th Cir. 1995). Indeed, the same interpretation has been applied by district courts in this circuit. *See, e.g.*, *Turnoy v. Liberty Life Assurance Co. of Boston*, No. 02 C 6066, 2003 WL 223309 (N.D. Ill. Jan. 30, 2003).

Mr. Ruttenberg largely grounds his construction of the term "beneficiary" on a single case, *Ritter v. Massachusetts Casualty Insurance Co.*, 786 N.E.2d 817 (Mass. 2003).[12]

---

[12] In addition to *Ritter*, Mr. Ruttenberg urges us to consider the position of the United States Department of Labor, which in a

(continued...)

Certainly, *Ritter* criticized what it considered to be an overly-broad reading of the ERISA term "beneficiary." *See id.* at 823-24. Although Mr. Ruttenberg is correct that the Supreme Judicial Court of Massachusetts' interpretation appears to support his position, we agree with the district court that, at most, *Ritter* simply is inconsistent with the approach in our sister circuits. We join the weight of authority in concluding that an ERISA "beneficiary" may be a person designated to receive benefits under the terms of the plan itself; the definition is not limited to individuals designated by a "participant" to receive benefits. The

---

[12] (...continued)
Supreme Court amicus brief criticized the "broad interpretation of 'beneficiary'" "with no logical stopping point" articulated in *Hollis. See* Brief for the United States as Amicus Curiae Supporting Petitioners at 25, *Yates v. Hendon*, 541 U.S. 1 (2004) (No. 02-458).

He argues that the Government's position is entitled to *Chevron* deference, but we need not consider this argument in detail because we cannot accept Mr. Ruttenberg's reliance on the *Yates* brief for two reasons. First, the Government's position arose in a different context; at issue in *Yates* was whether a working owner, not an independent contractor designated to receive benefits *by the plan*, could be considered a plan beneficiary. Second, more importantly, it would appear that Mr. Ruttenberg does meet even the Government's interpretation of the term. In *Yates*, the Government indicated that it objected to an overly broad reading of the term "beneficiary" that included persons who "lack[ ] any employment nexus with the plan sponsor." *Id.* It is clear that in Mr. Ruttenberg's case there is no danger of an individual lacking any employment nexus being covered by the plan. Even if he cannot be considered an employee, Mr. Ruttenberg cleared his trades through SMW, and thus had a significant nexus with the plan sponsor.

district court did not err in determining that Mr. Ruttenberg qualified as a "beneficiary" of the U.S. Life policy for ERISA purposes and correctly found his state law claims pre-empted by the federal statute.[13]

## C. Exhaustion of Administrative Remedies

An ERISA plaintiff must exhaust all available administrative remedies before filing suit to challenge a denial of benefits. *Zhou v. Guardian Life Ins. Co. of America*, 295 F.3d 677, 679 (7th Cir. 2002). Because the ERISA plaintiff need only exhaust *available* remedies, "we have recognized two circumstances in which a failure to exhaust may be excused. One is if there is a lack of meaningful access to review procedures, and the other applies if pursuing internal remedies would be futile." *Stark v. PPM America, Inc.*, 354 F.3d 666, 671 (7th Cir. 2004); *see also Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996). Futility is demonstrated by showing that it is "certain" a plaintiff's claim will be denied by the plan administrator. *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1238 (7th Cir. 1997). The decision to require exhaustion is committed to the sound

---

[13] Alternatively, for reasons that will become clear, we believe that the operative assumption—that Mr. Ruttenberg does not qualify as a "participant"—is incorrect. In reaching its decision, the district court did not, at the time, find it necessary to determine whether Mr. Ruttenberg was an "employee" under the plan and, therefore, an ERISA "participant." The district court subsequently found that he was an employee under the plan and, for reasons noted below, we agree that the contract term "employee" should be construed to include Mr. Ruttenberg. Given this determination, Mr. Ruttenberg is an ERISA "employee" and his state law claims would be preempted because he is a "participant" under 29 U.S.C. § 1002(7).

discretion of the district court and, consequently, is re-viewed only for abuse of that discretion. *Stark*, 354 F.3d at 671.

Our review of the record reveals that Mr. Ruttenberg did not follow U.S. Life's administrative requirements. Mr. Ruttenberg filed suit prematurely; U.S. Life had not officially granted or denied his claim when he brought suit. He agreed to stay the proceedings to conclude the adminis-trative process, but, once U.S. Life denied his claim, he undoubtedly failed to file an administrative appeal within the allowable 180-day time period. Despite these failures, there certainly is nothing in the record indicating that, had Mr. Ruttenberg complied with the administrative appeals requirement, U.S. Life would have altered its decision to deny benefits. Indeed, the record indicates that U.S. Life has opposed Mr. Ruttenberg's claim at every step. U.S. Life spent more than eighteen months adjudicating Mr. Ruttenberg's claim. In the course of this process, it con-tested every medical opinion favorable to Mr. Ruttenberg, including that of its own expert Dr. Diamond. After Mr. Ruttenberg agreed to a stay in the proceedings, U.S. Life spent over a year reviewing his submission before it denied the claim, knowing that he would resume the suit in the event of an unfavorable result.

The history of this matter, both before the district court and in administrative proceedings, provides ample support for the district court's view that U.S. Life would have denied Mr. Ruttenberg's claim even if he had filed an administra-tive appeal. Indeed, there is no evidence in the record demonstrating that U.S. Life's denial would be anything but "certain" if the company had reviewed Mr. Ruttenberg's claim once again. Accordingly, we cannot say that the district court's futility determination was " 'down-right unreasonable.' " *Zhou*, 295 F.3d at 679 (quoting *Cincinnati*

*Ins. Co. v. Flanders Elec. Motor Serv.*, 131 F.3d 625, 628 (7th Cir. 1997)). Therefore, the district court's futility determination was a proper exercise of discretion.


## D. Eligibility under the Policy

Mr. Ruttenberg submits that the district court erred in finding the "full-time," thirty-hour work requirement to be unambiguous. In the alternative, he challenges the court's determination that he did not provide sufficient evidence demonstrating that he worked more than thirty hours per week. U.S. Life argues in its cross-appeal that the district court erred in finding Mr. Ruttenberg to be an "employee" under the policy. The Company asserts that he was ineligible for coverage because he was neither an "employee" nor did he work "full-time."

Before considering Mr. Ruttenberg's eligibility under the policy, we must resolve two threshold disputes between the parties. First, Mr. Ruttenberg, relying on *Great-West Life Assurance Co. v. Levy*, 382 F.2d 357, 360 (10th Cir. 1967), contends that the burden of proving his ineligibility rests with U.S. Life. We cannot accept this view. Mr. Ruttenberg seeks to enforce benefits under the policy; he therefore bears the burden of proving his entitlement to contract benefits. *See Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997); *Fuja v. Benefit Trust Life Ins. Co.*, 18 F.3d 1405, 1408 (7th Cir. 1994).

Second, Mr. Ruttenberg submits that U.S. Life waived a challenge to his eligibility under the policy because it did not raise this contention before the administrative record closed. U.S. Life responds that Mr. Ruttenberg had adequate notice that the Company challenged his eligibility during the administrative process. Although U.S. Life did not consistently challenge Mr. Ruttenberg's eligibility in the

course of this claim,[14] we agree with the Company's assessment. Before the administrative record closed, the Company twice notified Mr. Ruttenberg that it questioned whether he met the "full-time" eligibility requirement: through a letter

_____

[14] The first time U.S. Life questioned Mr. Ruttenberg's eligibility was in a November 19, 2002 letter, during the administrative review—more than a year after Mr. Ruttenberg filed suit and more than a year and a half after he filed his claim. Prior to this letter, U.S. Life disputed whether Mr. Ruttenberg was disabled and the amount owed under the policy, not whether he was covered by the terms of the policy. On November 27, 2002, Mr. Ruttenberg responded by submitting trading records (which did not indicate hours worked) and stating that the time he spent on the floor was supplemented by preparation time, administrative tasks and market research, all totaling over thirty hours per week. His submissions did not provide documentation of the time he spent preparing for or closing out trades; in his deposition to U.S. Life he stated that he did not keep records of this time, and there is no indication that the policy required keeping such records, let alone that Mr. Ruttenberg was informed of such a requirement. In its final letter of denial, U.S. Life reserved the right to challenge his eligibility under the policy because it did not have documentation establishing that he was a full-time worker. This disclaimer was contained in a single paragraph after four pages discussing whether Mr. Ruttenberg was disabled. U.S. Life next raised the issue in its response to Mr. Ruttenberg's motion for summary judgment, to which Mr. Ruttenberg responded as he does here: that working thirty hours on the trading floor was impossible, that the thirty-hour requirement did not apply to him and that, at any rate, he worked more than the required hours in off-floor activities. U.S. Life reasserted its belief that he did not qualify as a full-time employee in its cross-motion for summary judgment, and Mr. Ruttenberg stood by the answer in the reply brief to his motion. U.S. Life gave its fullest articulation of Mr. Ruttenberg's infirmity under the thirty-hour provision in its reply to his response.

sent to his counsel on November 19, 2002, and in the letter denying Mr. Ruttenberg's claim. Mr. Ruttenberg acknowledged U.S. Life's challenge by stating, in response to the November 19 letter, that he "obviously" spent more than thirty hours per week preparing for trades. *See* R.49 at 5; *see also* R.36-2 at 505. Given that he had notice that his "full-time" status was at issue and had the burden of proving eligibility, Mr. Ruttenberg's waiver argument fails. We thus must consider his eligibility as an "employee" who works "full-time."

### 1. "Employee"

In its cross-appeal, U.S. Life asserts error in the district court's finding that the term "employee" is ambiguous, and in its use of the *contra proferentem* maxim to construe the term against U.S. Life. The district court considered the term "employee" as used in the contract ambiguous because its terms include filers of form 1099 who are typically independent contractors rather than common law employees. For his part, Mr. Ruttenberg argued at various points that he is not an employee, but an independent contractor. Regardless of the label, however, Mr. Ruttenberg presumably agrees that he must be considered an "employee" as the policy uses that term; otherwise, he would be ineligible for any benefits.

U.S. Life submits that looking to the form 1099 provision is only one factor in determining whether a person is an employee or an independent contractor. The company also asserts that *contra proferentem* is an interpretive tool that ought to be employed only to tiebreaker situations and, consequently, was improperly applied here. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323-25 (1992). In its view, the court first must analyze extrinsic evidence to

resolve the ambiguity and resort to *contra proferentem* only if consideration of such extrinsic evidence does not yield a resolution.

The situation here differs significantly from that confronted in *Darden.* There, the Court was called upon to interpret the ERISA term "employee" in determining what constituted an ERISA "participant." But the issue in this case does not present a question of statutory interpretation; rather it presents a question of contract construction. The district court here had to interpret the term "employee" contained in *this* contract to determine whether *the parties* intended it to cover traders like Mr. Ruttenberg. The relevant contract provision describes "Eligible Classes of Employees" as

> [a]ll full-time employees of the Participating Employer who are:
> - managers and officers earning over $20,000 annually
> - traders who report earnings on their 1099 form
> - firm traders who report prior years on their 1099 DDE form,
> but not those who are temporary, part-time or seasonal.

R.36-1 at 299 (the "eligibility clause").

Within this provision, the term "employee" is not otherwise defined in the policy, unlike terms such as "full-time." An "employee" in the traditional sense is a "person who works in the service of another person . . . under which the employer has the right to control the details of work performance." Black's Law Dictionary 543 (7th ed. 1999). However, employers account for income paid to these "employees" on IRS form W-2.[15] Generally speaking, a

---

[15] The IRS requires employers to account for "employees" through form W-2, *see generally* Internal Revenue Serv., U.S. Dep't

(continued...)

worker whose income is reported on form 1099 is an independent contractor, not a common law employee. *See EEOC v. N. Knox Sch. Corp.*, 154 F.3d 744, 747 (7th Cir. 1998). The inclusion of form 1099 in defining the contractual term "employee" thus indicates that the term includes more than just common law employees, and that other workers may be eligible under the policy. Those other workers may include independent contractors like Mr. Ruttenberg, but the scope of the contractual term is ambiguous.

We have endorsed the use of *contra proferentem* to resolve such ambiguities, at least in circumstances where—as here—the plan administrator was not empowered to interpret contract terms. *See Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302, 311-13 (7th Cir. 1992). U.S. Life argues that this court's more recent precedent, *see Hall v. Life Ins. Co. of N. America*, 317 F.3d 773, 776 (7th Cir. 2003),[16] limits *contra*

---

[15] (...continued)

of the Treasury, *Publication 15: Employer's Tax Guide* (2005), not on form 1099, *see* Internal Revenue Serv., U.S. Dep't of the Treasury, *Frequently Asked Questions 12.2: Small Business/Self-Employed/Other Business: Form 1099-MISC & Independent Contractors*, *at* http://www.irs.gov/faqs/faq12-2.html.

[16] In *Hall v. Life Insurance Co. of North America*, 317 F.3d 773 (7th Cir. 2003), the plaintiff sought to use *contra proferentem* to preclude the defendant from reducing her benefits by the amount that she received from an additional insurer. We held that the maxim could not be invoked "to justify a pro-insured decision in every case." *Id.* at 776. That is, there first must be an ambiguity:

The *contra proferentem* rule that Hall invokes is, however, just a tiebreaker; it does not entitle insureds to prevail simply because lay readers do not know all technical details of

(continued...)

*proferentem* to "tiebreaker" situations; the proper approach, according to the Company, was for the court to look first to extrinsic evidence in interpreting the ambiguous term. Even if U.S. Life is correct that the district court should have looked to extrinsic evidence in construing the eligibility clause, it offered no such evidence to the district court, nor does it suggest the existence of such evidence to this court.[17] Given the lack of extrinsic evidence, the use of *contra*

---

[16] (...continued)

insurance law. English does not contain words for all complex economic arrangements; whenever the language lacks a one-to-one mapping of words to ideas (or words to things) there is a potential for ambiguity and confusion. This potential is not enough to justify a pro-insured decision in every case, however . . . .

The doctrine that ambiguities are resolved against insurers serves its function when it prevents traps for the unwary. Hall was not ensnared; even a modest degree of diligence would have enabled a CPA to understand that the New York Life policy, offered through a professional group and captioned "Group Insurance," probably would be classified as "group insurance" under the [defendant] LINA policy. Hall did not read the LINA policy, misunderstand a vague passage or veiled allusion, and only then opt into the New York Life policy; she did not read the LINA policy at all until it was too late. That omission led her to pay for coverage under the New York Life policy, which, as things have turned out, offered her no net benefit, but ERISA does not protect employees against their own imprudence.

*Id.* (citations omitted).

[17] For this reason we cannot accept U.S. Life's invitation to remand to the district court so that it may offer extrinsic evidence supporting its position. U.S. Life had ample opportunity to offer this evidence to the district court in the first instance.

*proferentem* would be justified as a tiebreaker even under *Hall.* Indeed, we have noted that the *contra proferentem* doctrine "serves its function when it prevents traps for the unwary." *Id.* Allowing Mr. Ruttenberg to purchase insurance for which U.S. Life now claims that he is ineligible constitutes the type of "trap for the unwary" that *contra proferentem* is meant to prevent. The district court correctly found the term "employee" to be ambiguous, and properly construed the term against the policy's drafter, U.S. Life.

### 2. "Full-Time"

The term "full-time" is defined to

> mean[ ] active work on the Participating Employer's regular work schedule for the class of employees to which you belong. The work schedule must be at least 30 hours a week.

R.36-1 at 298. Basic to the definition of "full-time" is the requirement that a covered employee work for more than thirty hours per week. The district court found the term to be unambiguous and determined that Mr. Ruttenberg failed to offer sufficient evidence that he worked the requisite thirty hours per week.

U.S. Life urges us to affirm the district court's determinations, both its finding that the term "full-time" is unambiguous and its conclusion that Mr. Ruttenberg failed to offer sufficient evidence. The company contends that Mr. Ruttenberg failed to provide evidence that he met the thirty-hour requirement, even off of the trading floor; in response to questions about his eligibility Mr. Ruttenberg argued only that he spent more than thirty hours per week working on trades and that it was impossible to spend more than thirty hours per week on the floor. Assuming that the "full-time" requirement unambiguously includes working

more than thirty hours per week, U.S. Life asserts that the district court correctly determined that Mr. Ruttenberg failed to demonstrate his eligibility.

In reply, Mr. Ruttenberg submits that the plain language of the definition, requiring "active work on the Participating Employer's regular work schedule *for the class of employees to which you belong," id.* (emphasis added), indicates that the full-time requirement applies only to SMW's common law employees, not to independent traders covered by the policy; he asserts that, at the very least, the thirty-hour requirement's application is ambiguous. As for the evidence presented, he contends that, at certain stages in the litigation, U.S. Life adopted his view that a trader could not work thirty hours on the floor and that he did work more than thirty hours per week in preparing for trades. He points out that other courts have relaxed contractual "full-time" requirements to find that an insured is covered. *See Burke v. Blue Cross Blue Shield of Nebraska*, 558 N.W.2d 577 (Neb. 1997); *Jetson v. CNA Ins. Co.*, 536 So. 2d 569 (La. Ct. App. 1988). Mr. Ruttenberg also submits that it would defeat the reasonable expectations of the insured to deny coverage to more than eighty traders, based on a "full-time" requirement they cannot meet, after they have paid for the insurance.

Contrary to Mr. Ruttenberg's assertion, U.S. Life did not adopt in its statement of facts the position that he could not work more than thirty hours on the floor and that he worked the required hours in preparing for trades. U.S. Life's statement of facts listed the text of a letter received from Mr. Ruttenberg's attorney only to support the fact that the letter was received, not the letter's contents. Indeed, aside from assertions that he "obviously" worked more than thirty hours per week preparing for trades, he submitted no evidence that such was the case, for example, through affidavits from himself or associates. He was aware before

the administrative record closed that U.S. Life questioned his eligibility under the "full-time" requirement, but failed to supplement the record. Thus, Mr. Ruttenberg presented insufficient evidence that he actually worked more than thirty hours per week. On this record, therefore, any relief Mr. Ruttenberg may be granted must be found through contractual ambiguity.

Turning to the ambiguity question, other courts' interpretations of the term "full-time" in other contracts do not control the present inquiry. Rather, we must determine what the term means in *this* insurance contract.

In interpreting a contractual term, we cannot give meaning to a word standing alone. Rather, we must take into account its placement in the text and discern its proper relationship to the text in which it is placed. Here, given the ambiguity in the term "employee," it is not clear from the contract that the "full-time" requirement applies to non-common law classes of "employees" like independent traders. Indeed, in defining "full-time," the policy simply refers back to the ambiguous term "employee": "FULL-TIME means active work on the Participating Employer's [SMW's] regular work schedule for the class of employees to which you belong." R.36-1 at 298. If, as we have determined, the term "employee" is itself ambiguous as applied to Mr. Ruttenberg, then the policy is equally ambiguous about the application of the "full-time" requirement to his class of worker.

Moreover, the "full-time" provision is ambiguous even apart from the lack of clarity in the term "employee." Independent traders like Mr. Ruttenberg do not work according to a work schedule established by SMW; independent traders clear their trades through SMW but the company does not control the details of their work schedules. Similarly, to qualify as a "full-time" worker, the

employee must render "active work," defined as performing "each duty of your job for full pay." *Id.* It is not clear how "full pay" is measured for independent traders who do not draw a salary from SMW and simply clear their trades through the company. The inclusion of independent traders as "employees" under the eligibility clause cannot be reconciled with a definition of "full-time" that such workers cannot meet.[18] One of the provisions must take precedence, and arguably this means that the "full-time" requirement does not apply to the class of eligible employees that includes Mr. Ruttenberg.

Mr. Ruttenberg's proposed interpretation, that the "full-time" requirement does not apply to his category of eligible "employee," is at least as plausible as U.S. Life's. The term

---

[18] These ambiguities, set forth above, are in addition to the apparent question of the "class" of "employees" to which traders like Mr. Ruttenberg belong. Documents which outline the details of the policy divide individuals into four numbered classes that do not necessarily correspond to the categories in the bulleted eligibility clause. Mr. Ruttenberg initially took the position that he belonged to "Class 3," which he argued made him a non-employee. As the district court noted, this classification would be problematic for him because, as a non-employee, he would be ineligible for any policy benefits. Some policy documents list Mr. Ruttenberg as "Class 4," R.36-1 at 72. The only differences between the classifications seem to be in titles: Class 3 members are titled "Program Traders," *id.* at 75, and Class 4 members are listed in the category "All Others," *id.* at 76; but Classes 3 and 4 are both governed by the same contractual provisions, *see id.* at 294. To confuse matters further, the policy terms seem to encompass Mr. Ruttenberg regardless of his classification number because the policy's eligibility clause includes traders like Mr. Ruttenberg "who report earnings on the 1099 form." *Id.* at 299.

cannot be said to be unambiguous, and the district court erred in dismissing his claim on that ground. Given the error, we remand to the district court for further proceedings.[19]

Apart from the ambiguity questions, Mr. Ruttenberg and U.S. Life each argue that they are entitled to summary judgment on the merits of their respective claims. U.S. Life asserts that Mr. Ruttenberg is not disabled; for his part Mr. Ruttenberg contends that U.S. Life's own expert in fact found him to be disabled. The merits of Mr. Ruttenberg's claim, whether he is disabled and therefore entitled to the policy benefits, is a matter properly reserved to the district court on remand.

---

[19] Because the district court erred in finding the term "full-time" to be unambiguous, our decision need not rest on Mr. Ruttenberg's argument that the position adopted by U.S. Life defeats the expectations of the insured. However, we note in the alternative that courts in ERISA claims interpret policies based on normal contract principles; this includes considering the reasonable expectations of the insured. *See Lifson v. INA Life Ins. Co. of New York*, 333 F.3d 349, 353 (2d Cir. 2003); *Tester v. Reliance Standard Life Ins. Co.*, 228 F.3d 372, 375 (4th Cir. 2000); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556-57 (6th Cir. 1998) (en banc); *Saltarelli v. Bob Baker Group Med. Trust*, 35 F.3d 382, 386 (9th Cir. 1994). Mr. Ruttenberg offered sufficient evidence that he and other independent traders expected to be covered by the plan's terms, and we do not believe that such an expectation is so unreasonable to warrant summary judgment. We further note that, on this record, and for reasons discussed above, application of the *contra proferentem* maxim to interpret the "full-time" provision on remand may be appropriate.

**Conclusion**

For the foregoing reasons, we reverse the district court's decision and remand for further proceedings consistent with this opinion. Mr. Ruttenberg may recover his costs in this court.

REVERSED and REMANDED

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*