# In the
# United States Court of Appeals
## For the Seventh Circuit
---

No. 06-2797

JAMES HESS and JOHN HESS,

*Plaintiffs-Appellants*,

*v.*

REG-ELLEN MACHINE TOOL CORPORATION
EMPLOYEE STOCK OWNERSHIP PLAN,

*Defendant-Appellee*.

---

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 04 C 50238—**Philip G. Reinhard**, *Judge*.

---

ARGUED APRIL 2, 2007—DECIDED SEPTEMBER 18, 2007

---

Before RIPPLE, ROVNER, and WOOD, *Circuit Judges*.

WOOD, *Circuit Judge*. Plaintiffs James and John Hess are brothers who used to work for Reg-Ellen Machine Tool Corporation. While there, they participated in the company's Employee Stock Option Plan ("the Plan"). Since 1998, some time after the brothers stopped working for Reg-Ellen, they have been seeking a variety of benefits under the Plan. Now that they are over 55, they are apparently entitled to benefits, and indeed we are told that they have begun to receive payments under the Plan. As the present lawsuit demonstrates, however, they believe they are entitled to more.

The Hess brothers have not always been clear about what exactly they do want from the Plan. At times, they have sought benefits to which they were not yet entitled. See *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653 (7th Cir. 2005) ("*Hess I*"). This time around, they claim that the Plan improperly denied direct rollover distributions of their Plan accounts into the employee benefits plans of their new employer or into a 401k plan. They also argue that they are entitled to segregation and liquidation of their accounts, even though they may never have requested that relief. Finally, they complain that the Plan wrongly denied John Hess's diversification request in 1999. We conclude that the district court correctly rejected these claims, and thus we affirm that court's judgment for the Plan.

## I.

The facts underlying this case have been largely set out in this court's previous decision involving these parties. *Hess I*, 423 F.3d at 656-58. We review them very briefly here. John and James Hess (who are twins) began working at Reg-Ellen in 1987 and 1989; they both resigned in 1996 at the age of 51 or 52. Each one had participated in Reg-Ellen's Employee Stock Option Plan. Their accounts included both employer contributions of stock and their individual contributions through a salary reduction system. The Plan allowed participants to devote their contributions either to Reg-Ellen stock purchases or to a more diversified portfolio called the "Other Investments Account." In 1995, Reg-Ellen's Board of Directors amended the Plan to eliminate employee salary reduction contributions and most of the company's contributions to the Plan.

Two years after their departure from the company, in 1998, the Hesses wrote identical letters to the president of Reg-Ellen, Timothy Turner, requesting that their funds

under the Plan be rolled over into an IRA of their choice, essentially demanding an early distribution. The attorney for the Plan, Craig Thomas, wrote back telling them that they were not eligible for a distribution until they reached their 55th birthday. Later that same year, John wrote to the Plan trustee and asked that his Reg-Ellen stock be transferred to the Other Investments Account and diversified. This request was also denied on the ground that he was not eligible for this kind of diversification until he reached age 55. The Hesses filed lawsuits challenging these decisions, but our decision in *Hess I* affirmed the district court's judgment in the company's favor.

Over five years later, on March 3, 2003, the Hesses made a written request to the Plan for review of the denial of their January 1998 and January 1999 requests for a rollover of their vested benefit accounts. After a certain amount of scheduling and rescheduling, the Plan administrator held a hearing on May 22, 2003. It issued a decision on July 21, 2003. Just before the hearing, on May 13, 2003, John Hess also requested review of the Plan's denial of his claim for a diversification distribution in 2000. The administrator issued a decision on that claim on September 23, 2003. In April 2004, the Hesses sent the Plan additional information and requested reconsideration of the July 21, 2003, decision, but the Plan did not respond. The Hesses filed the present action on May 20, 2004.

## II

We review a district court's grant of summary judgment *de novo*, drawing all reasonable inferences in favor of the nonmoving party. *Ruttenberg v. United States Life Ins. Co.*, 413 F.3d 652, 658-59 (7th Cir. 2005). In ERISA cases, if the plan grants to its administrator the discretion to construe the plan's terms, then the district court must review a denial of benefits deferentially, asking only whether the plan's decision was arbitrary or capricious. *Id.*

In this case, the parties agree that the Plan confers on the administrator that type of discretionary authority. An administrative decision is arbitrary and capricious if the decision conflicts with the plain language of the plan; we will overturn it only if it is "downright unreasonable." *Cozzie v. Met Life Ins.*, 140 F.3d 1104, 1110 (7th Cir. 1998).

Counts I and III of the complaint dealt with the Hesses' effort to obtain a rollover distribution. The district court rejected the Hesses' challenge to the Plan's denial of that measure for the straightforward reason that "[p]laintiffs never identified or asserted any substantive provision entitling them to a rollover." Instead, the district court found, "plaintiffs relied exclusively on language in section 8 in contending that a rollover . . . was available." While this is an accurate representation of the arguments that the Plan administrator made, it is not an entirely accurate characterization of what went on during the proceedings before the Plan.

At the May 22, 2003, hearing regarding the Hesses' rollover claims, their attorney indicated that he was relying on the rollover provisions in section 8 of the Plan to support his clients' claims. The representative for the Plan asked, "Is there any other provision of the Plan that the Hesses are calling to the administrator's attention that entitle them to the type of distribution, or is it just this direct rollover provision?" The plaintiffs' attorney replied, "The claim in appeal today is simply for a rollover under the direct rollover, under Section 8.11 of the Plan. The other claims that they have are not related to today's request." Section 8.11, aptly enough, is entitled "Direct Rollover." It describes the circumstances under which "a distributee" may elect to have "any portion of an eligible rollover distribution" paid directly into "an eligible retirement account." Article VII of the Plan is where the rules on "Determination and Distribution of Benefits" are found.

Shortly after the exchange between the Hesses' lawyer and the Plan representative, James Hess tried to pose a question to a Reg-Ellen Board member who was present at the hearing. Pointing out that "we know that other people have been paid out," James Hess said, "My question is what was the provision that [former employee] Bill Ray was paid out? That's all I'm asking. Does anybody here know what the provision—." At that point, the Plan representative cut off the question, but he ultimately conceded, "Your statement regarding Bill Ray's payout is so noted, and the Plan administrator will take that to mean that you believe that somehow supports your entitlement to a payout, and that will be considered." The Hesses' attorney then clarified that Bill Ray was "one of the ten people that we believe received payouts." He continued, "We don't have that information. That information is the Plan's information . . . . We may be wrong . . . because we don't have all the records, but . . . we wanted to be treated in a same nondiscriminatory manner." As a final statement, James Hess added, "Bill Ray did have all his shares bought out . . . . Whatever that provision was. I feel that both John and I have that same entitlement." The entire Plan was entered into the record by the plaintiffs. In its denials of the Hesses' claims made at the May 2003 hearing, the Plan explained that "Mr. Hess has not identified the underlying Plan provision which entitles him to a distribution" and that the Plan does not "allow any participant at any time to 'roll' their account balance out of the Plan."

It turns out that Ray received a lump sum payment from the Plan pursuant to section 7.4, which is entitled "Determination of Benefits upon Termination." This is the section under which the Hess brothers are currently being paid by the Plan. Section 7.4 is not a rollover provision; it is a distribution provision. That section provides for details like amount, manner, and timing of distribution. With respect to timing, it says:

> Distribution of the funds due to a Terminated Partici-
> pant shall be made on the occurrence of an event
> which would result in the distribution had the Termi-
> nated Participant remained in the employ of the
> Employer (upon the Participant's death, Total and
> Permanent Disability, Early or Normal Retirement).

Section 7.4(a), ¶ 3. The earliest of the times mentioned is early retirement, which the Plan defines in section 1.14 as the first day of the month following the date on which the participant or former participant attains age 55. Section 7.4 goes on to provide that some Plan participants will receive their benefits in a lump sum (if the benefits total less than $50,000, but no annual lump sum can be more than $10,000), while others receive payments over a five-year period (if the benefits total more than $50,000). The Hess brothers both are receiving their benefits over five years. Bill Ray appears to have received his benefits in one lump sum. From this, one would infer that Ray's benefits were less than $10,000; there is no reason to assume that Ray received the kind of rollover that the Hesses wanted.

This brief look at the Plan is enough to show that the Plan's denial of the Hesses' request for a rollover was not arbitrary and capricious; indeed, it strikes us as a reasonable interpretation of the Plan. Section 8.11 allows rollovers only "at the time and in the manner prescribed by the Plan Administrator" and only for "eligible rollover distribution[s]." The Hesses have no evidence that the Plan is inconsistently allowing or denying rollovers under section 8.11, and even if they did, it might not be enough to render the Plan's interpretation of their section 8.11 rights unreasonable.

We note briefly that the Hesses make several other arguments in an effort to save Counts I and III. They argue that the July 21, 2003, decision was not an exercise

of discretion and was not a final decision on the merits and that *de novo* review applies to the administrator's decision. The Plan counters that all of these arguments have been waived by plaintiffs for failing to present them to the district court. The Hess brothers did not submit a reply brief, and thus did not respond to these waiver arguments. Our own review of the record indicates that these arguments were indeed not raised in the district court; the Hesses therefore may not rely on them here.

## III

In Counts II and IV of their complaint, the Hesses asserted claims relating to the Plan's refusal to segregate and liquidate their accounts. The district court held that the plaintiffs did not exhaust their administrative remedies with respect to these theories. We review a district court's decision to dismiss a complaint on exhaustion grounds for an abuse of discretion. *Zhou v. Guardian Life Ins. Co. of Am.*, 295 F.3d 677, 679 (7th Cir. 2002). As the district court noted, the only exceptions to exhaustion are where "there is a lack of meaningful access to review procedures. . . [or] if pursuing such internal remedies would be futile." *Ruttenberg*, 413 F.3d at 662. The Hess brothers concede that they did not directly present these claims for administrative review. They offer several reasons why we should nonetheless reach them: (1) because at their appeal hearing in May 2003 they implicitly referred to section 7.4, which includes the relevant segregation and liquidation provision, these claims were denied as part of the July 21, 2003, decision; (2) even if these claims did not go through administrative review, exhaustion is an affirmative defense that the defendant failed to plead; and (3) these claims should be "deemed denied" and therefore deemed exhausted based on what appears to be a variation of the first *Ruttenberg* exception.

The first argument is easy to reject, because the brothers never discussed their segregation and liquidation claims at the May 2003 hearing. The Reg-Ellen Plan is a long and detailed (some might even say tedious) document, which contains multiple instructions to beneficiaries and the Plan Administrator. Section 7.4 goes on for five pages. A simple, generic reference to this section of the Plan falls woefully short of exhausting the plaintiffs' administrative remedies for their segregation and liquidation claims.

The next question is whether the Plan failed to plead exhaustion as an affirmative defense. The Plan contends that the Hesses waived this argument, or, in the alternative, that this is the type of affirmative defense that can be raised in post-answer motions for summary judgment. We have held that "a delay in asserting an affirmative defense waives the defense only if the plaintiff was harmed as a result." *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2005). As the Plan notes, the Hesses fully understood the exhaustion requirement, as they explicitly stated in their complaint that they had exhausted their administrative remedies for Counts I and III. The Hesses claim, however, that if the Plan had alleged failure to exhaust during the district court proceedings, they "could and would have taken a voluntary dismissal of their suits, attempted further exhaustion and thereafter refiled their suit." The Plan did allege failure to exhaust in its reply to the Hesses' response to the Plan's summary judgment motion. If what the Hesses wanted was time to move for a voluntary dismissal of their case so that they could perfect exhaustion, they had ample time during the four months that followed before the district court granted the Plan's motion. In short, the Hesses have not suffered any prejudice from the way in which the Plan brought its exhaustion argument into the case.

Finally, the Hesses cannot contend that they were denied full and fair review of their segregation and liquidation claims. It was they who failed to raise these claims in their administrative review proceedings. There is therefore no reason why we should deem these claims denied. The district court properly granted summary judgment on Counts II and IV to the Plan based on the Hesses' failure to exhaust their administrative remedies.

**IV**

The district court also concluded that the Plan's decision that John Hess was not "entitled to diversification for the year 1999 was not arbitrary and capricious." This conclusion is not only correct, but also appears to be the same result reached by this court in *Hess I*. See 423 F.3d at 653. The Plan, responding to the argument at issue here, decided that a claimant had to turn 55 in a calendar year in order to claim certain available benefits within the following 90 days at the close of that calendar year. It was not enough, in the Plan's view, for the claimant to turn 55 within the 90 days following the end of the year. The Plan does not appear to argue *res judicata* or any similar defense, but the result is still the same. The Plan's reading of its own language is not arbitrary and capricious. The district court's grant of summary judgment to Reg-Ellen on Count V was proper.

\*   \*   \*

We AFFIRM the judgment of the district court. We trust that this is the last time that we, or any other court, will be seeing this case: two lawsuits are enough.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*