NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 8, 2017[*]
Decided March 9, 2017

**Before**

WILLIAM J. BAUER, *Circuit Judge*

FRANK H. EASTERBROOK, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 15-3401

| | |
|---|---|
| DEONTA KYLES, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 11 CV 5216 |
| LATONYA WILLIAMS, et al., | |
| *Defendants-Appellees*. | Andrea R. Wood, |
| | *Judge*. |

**O R D E R**

Deonta Kyles, a prisoner who underwent two knee surgeries, sued his prison's medical staff for deliberate indifference to his post-operative knee condition, which he asserts required more physical therapy than he received. The district court granted summary judgment for the defendants. It concluded that Kyles had not exhausted one

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

part of this claim and that, on the exhausted part, he produced no evidence from which a rational jury could find the defendants liable. Its reasoning is correct, so we affirm.

We recount the facts in the light most favorable to Kyles, the opponent of summary judgment. *See Carson v. ALL Erection & Crane Rental Corp.*, 811 F.3d 993, 994 (7th Cir. 2016). While a prisoner at Stateville Correctional Center in Illinois, Kyles tore the meniscus and a ligament in his right knee while playing basketball. He underwent two surgeries to repair his knee in 2009, and he started physical therapy at Stateville upon his return from the hospital. Kyles had eight sessions of physical therapy over four weeks in the fall of 2009. After those sessions ended, the physical therapists taught him how to continue on his own with the exercises.

Kyles performed these exercises for several months until May 2010, when he was doing knee bends with weights in his cell and felt something "pop" in his knee. (He does not say that his knee bends were part of his therapeutic exercises.) The next day Kyles notified a medical technician about this, and he scheduled Kyles to see a physician's assistant, LaTonya Williams, who saw Kyles the following day. Williams prescribed ibuprofen and ice to treat the injury, ordered a knee support for Kyles, and recommended that he discontinue exercising temporarily. She also directed Kyles to follow up with her, and Kyles saw her again two months later. At that time Kyles complained that his right knee locked up on him, so Williams prescribed ibuprofen for two months and analgesic balm. She also renewed a low-bunk permit for Kyles and advised him to return to the health care-center on an as-needed basis.

Over the next few months, during the fall of 2010, Kyles sought to restart physical therapy for his knee. Between August and November 2010 Kyles wrote approximately 15 letters to Dr. Parthasarathi Ghosh, the prison's medical director, requesting physical therapy and enhanced medical care. The record does not reflect whether those letters, which went unanswered, were received. But Williams, the physician's assistant, saw Kyles again in September after he fell and complained of pain in his shoulder and his knee. Williams ordered an x-ray of his shoulder and an arm sling, prescribed ice and pain medication, and renewed his low-bunk permit. Kyles also saw a medical technician in December, when he complained about his knee and asked again for physical therapy. The technician had him see Williams a week later, in January 2011. After examining him, Williams decided to have Dr. Ghosh reevaluate Kyles. That evaluation did not occur as Dr. Ghosh retired in March.

Kyles filed two grievances about this sequence of events. His first grievance, which he filed as an emergency in November 2010, objected to limiting physical therapy

in 2009 to eight sessions. The warden denied the grievance as not a true emergency, but invited Kyles to submit the grievance through the ordinary procedure. Kyles did not. Instead he appealed the warden's denial of his emergency grievance to the prison system's Administrative Review Board. The Board rejected the appeal.

Kyles's second grievance concerned the lack of a medical reevaluation that Williams had advised in January 2011. He filed the grievance in July 2011, complaining that the medical director had not seen him despite his repeated requests over several months. A grievance counselor responded. While noting that Kyles had been referred to the medical director, the counselor did not schedule a reevaluation. So far as the record shows, Kyles did not appeal the response to his second grievance to the Administrative Review Board.

Kyles's next step was this suit, where the defendants moved for summary judgment, raising two grounds. First, they argued that Kyles had failed to exhaust his administrative remedies. Second, on the merits they submitted testimony from Kyles's surgeon, who said that physical therapy was not needed to resolve his knee pain; exercises were sufficient. The district court granted the defendants' motions. It first determined that Kyles's claims were limited to those raised in his November 2010 grievance (about physical therapy) because he supplied no evidence that he exhausted other grievances. It then determined that Kyles had not presented evidence that would allow a jury to find that the lack of physical therapy or other treatment reflected deliberate indifference.

We begin by addressing exhaustion. The district court properly concluded that Kyles had exhausted his claim about the lack of more physical therapy. Kyles submitted his grievance about this complaint in November 2010, received a denial, and appealed it to the Administrative Review Board. Kyles did not need to do anything more to exhaust. *See* 20 Ill. Admin. Code § 504.840; *Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005). The district court also correctly ruled that Kyles did not properly exhaust his claim that Ghosh and the medical staff refused to reevaluate him after Williams had referred him for reevaluation in January 2011. Kyles filed a grievance in July 2011 about this, but after the grievance counselor responded, Kyles was required to appeal that response to the Administrative Review Board, if he was dissatisfied. *See* 20 Ill. Admin. Code §§ 504.810, 504.830 (detailing grievance procedure); *see also Burrell v. Powers*, 431 F.3d 282, 284 (7th Cir. 2005) (explaining process). His failure to do so bars his claim that the medical providers ignored him after Williams referred him for another examination.

*See, e.g., Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1173–75 (7th Cir. 2010) (dismissing inmate's case for failure to exhaust administrative remedies).

The district court also correctly rejected Kyles's contention that the defendants could not raise non-exhaustion as an affirmative defense at the summary-judgment stage. Non-exhaustion can be asserted in a motion for summary judgment if the defendants have not waived the defense. *See Hess v. Reg-Ellen Mach. Tool Corp. Emp. Stock Ownership Plan*, 502 F.3d 725, 729–30 (7th Cir. 2007); *Curtis v. Timberlake*, 436 F.3d 709, 711 (7th Cir. 2006). The defendants raised non-exhaustion in their answers, so they did not waive the defense.

On the merits, Kyles argues that a jury reasonably could conclude that stopping physical therapy after eight sessions, or not restarting it after his knee "popped," constituted deliberate indifference. But Kyles supplied no evidence suggesting that the absence of physical therapy caused his knee to "pop" or impaired its healing. Without evidence of causation, there is no actionable tort. *See Fields v. Wharrie*, 740 F.3d 1107, 1111 (7th Cir. 2014). Moreover after Kyles received eight physical therapy sessions, the therapists taught him how to perform therapeutic exercises on his own. His surgeon testified without contradiction that successful recovery after surgery depended upon performing these prescribed exercises properly. In light of this evidence, the defendants' decision to limit physical therapy to eight sessions does not reflect deliberate indifference. *See Burton v. Downey*, 805 F.3d 776, 787 (7th Cir. 2015) (holding that an inmate could not sustain a claim of deliberate indifference when medical personnel at the prison instructed the inmate how to perform therapy in his cell). Although Kyles preferred more physical therapy instead of properly exercising on his own, he was not entitled to dictate the terms of his otherwise reasonable care. *See Harper v. Santos*, No. 15-1903, 2017 WL 568335, at *3–4 (7th Cir. Feb. 13, 2017); *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011).

The district court also correctly granted summary judgment on Kyles's claim that the defendants ignored his knee pain after it "popped." One medical technician saw Kyles the day after his knee "popped " in May and scheduled him to see Williams, who saw him the next day and prescribed pain medication and a knee brace. Williams followed up in July, treated him again after his fall in September, and finally saw him in January 2011 after a visit with another medical technician. Each time she prescribed pain medication and directed him to follow up with her as needed. The defendants, therefore, did not consciously disregard a serious risk to Kyles's pain. *See Holloway v. Del. Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). Kyles replies that one of the

defendants threw out his requests for more medical visits, but he does not present evidence of this. Given his frequent attention by staff in the medical unit during the period covered by his first grievance in 2010, his claim of deliberate indifference fails.

AFFIRMED.